FILED
2016 Nov-09  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES ZANATY, and** ) | |
| **CYNTHIA ZANATY,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.:  2:16-CV-0277-VEH** |
| ) | |
| **WELLS FARGO BANK, N.A., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.    Introduction

This case concerns an alleged mishandling of a residential mortgage and an attempted wrongful foreclosure on Plaintiffs' home located in Vestavia Hills, Alabama (Doc. 4-1 at 3 ¶ 5),[1] and was removed to this court on February 17, 2016, on the basis of diversity and federal question jurisdiction. (Doc. 1 at 1-2). Plaintiffs filed an amended complaint (Doc. 18) on April 14, 2016. This amended pleading contains 17 separate counts. (*See generally* Doc. 18).

Pending before the court is Defendants' Renewed Motion to Dismiss (Doc. 28)

---

[1]  All page references to Doc. 4-1 correspond with the court's CM/ECF numbering system.

(the "Motion") filed on May 11, 2016,[2] which seeks a partial dismissal of Plaintiffs'
case. More specifically, the Motion pertains to Counts One through Twelve and
Fifteen through Seventeen of Plaintiffs' amended complaint (Doc. 28 at 1) and is
supported by a separately filed brief. (Doc. 29). Plaintiffs filed their opposition (Doc.
31) to the Motion on June 8, 2016. On June 15, 2016, Defendants followed with their
reply. (Doc. 34). Accordingly, the Motion is now under submission, and, for the
reasons explained below, is **GRANTED IN PART** and otherwise **DENIED**. Further,
Plaintiffs are **GRANTED** leave to replead some claims, but not any of those that are
dismissed with prejudice as a result of Defendants' Motion.

## II.   Standard(s)

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* FED.

---

[2] Three Defendants brought the Motion–Wells Fargo Bank, N.A., America's Servicing
Company, and U.S. Bank, N.A. (Doc. 28 at 1). Because of Plaintiffs' failure to respond to a show
cause order, on September 23, 2016, the court entered an order that terminated America's Servicing
Company and U.S. Bank, N.A. as separately named Defendants and substituted in Wells Fargo Bank,
N.A., doing business as America's Servicing Company as the sole Defendant in the case. (Doc. 35).
Plaintiffs since have implicitly conceded that America's Servicing Company is simply a doing-
business-as entity for Wells Fargo Bank, N.A., but have contended in a motion that U.S. Bank, N.A.
should be reinstated as an active party in this litigation. (Doc. 36). Defendants' recent response (Doc.
38) to the court's show cause order (Doc. 37) on this issue agrees that U.S. Bank, N.A. should be
reinstated as a Defendant as it is the current owner of Plaintiffs' loan. (Doc. 38 at 2 ¶ 4). Therefore,
Plaintiffs' Motion To Alter, Amend, or Vacate (Doc. 36) is **GRANTED**, and the clerk is **HEREBY
DIRECTED** to reinstate U.S. Bank, N.A. as an active party and "Defendants" within this
memorandum opinion and order shall refer to Wells Fargo Bank, N.A., doing business as America's
Servicing Company ("Wells Fargo/ASC") and U.S. Bank, N.A. ("U.S. Bank").

R. CIV. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting FED. R. CIV. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007);[3] *see also* FED. R. CIV. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been

---

[3] While Plaintiffs' opposition cites to *Twombly* and *Iqbal*, it also incorrectly references the outdated Rule 12(b)(6) standard that applied before these abrogating decisions. (*See, e.g.*, Doc. 31 at 3 ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984))).

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

### B.    Shotgun Pleadings

"The typical shotgun complaint contains several counts, each one incorporating

4

by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Another confusing aspect of many shotgun complaints is the practice of lumping multiple claims and/or multiple defendants together within the same count or counts. A complaint that contains shotgun characteristics make it "'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief' . . . [and] does not comply with the standards of Rules 8(a) and 10(b)." *LaCroix v. W. Dist. of Kentucky*, 627 F. App'x 816, 818 (11th Cir. 2015), *cert. dismissed sub nom. LaCroix v. U.S. Dist. Court for W. Dist. of Kentucky*, 136 S. Ct. 996, 194 L. Ed. 2d 2 (2016) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

Shotgun pleadings are strongly disfavored by the Eleventh Circuit. *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008) ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed."), *abrogated on other grounds by Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937,

1950-51, *and Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974.[4] In fact, if a defendant faced with a shotgun complaint fails to move for an order requiring repleader, the Eleventh Circuit has made it clear that the district court, "acting *sua sponte*, should . . . str[ike] the plaintiff's complaint, and the defendant['s] answer, and instruct[] plaintiff's counsel to file a more definite statement."*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996).

## III. Analysis

### A. Preliminary Considerations

Before addressing the specific claims that Defendants challenge in their

---

[4]   *Davis* footnote 54 gives numerous examples of Eleventh Circuit anti-shotgun references and states in full:

> *See, e.g., United States ex el. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006); *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1156 n.1 (11th Cir. 2006); *Ambrosia Coal and Constr. Co. v. Morales*, 368 F.3d 1320, 1330 n.22 (11th Cir. 2004); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 nn.9-10 (11th Cir. 2002); *Byrne v. Nezhat*, 261 F.3d 1075, 1128–34 (11th Cir. 2001); *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001); *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1326-27 n.6 (11th Cir. 1998); *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1368 (11th Cir. 1998); *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *Ibrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162 *passim* (11th Cir. 1997); *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996); *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1567 (11th Cir. 1995); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1483-84 (11th Cir. 1992); *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991); *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543-44 n.14 (11th Cir. 1986) (Tjoflat, J., dissenting). This list is just a teaser—since 1985 we have explicitly condemned shotgun pleadings upward of fifty times.

*Davis*, 516 F.3d at 979 n.54.

Motion, the court addresses some preliminary issues. First, as a general matter, the court finds that Plaintiffs' amended complaint violates anti-shotgun as well as several other fundamental pleading principles. *See, e.g.*, FED. R. CIV. P. 8(a)(2) (requiring complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief"); FED. R. CIV. P. 8(d)(1) ("Each allegation must be simple, concise, and direct.").

Consequently, in repleading, Plaintiffs' counsel <u>must</u> study the *Davis* decision and the numerous cases cited therein and draft a much more definite and comprehensible pleading. Plaintiffs' claims against <u>each Defendant</u> must be set forth in separately numbered counts. Further, Plaintiffs' restated pleading must include only <u>plausibly</u> stated claims and avoid lumping any causes of action together within the same count.

Second, in deciding this Motion, Plaintiffs have objected to the court's consideration of "an endorsed note and an assignment" on the basis that Plaintiffs dispute the authenticity of those specific records. (Doc. 31 at 3 n.3); *cf. also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (When deciding a Rule 12(b)(6) motion "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims. (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.

7

1997) (per curiam))). Because those objected-to documents are not pivotal to the court's Rule 12(b)(6) analysis, Plaintiffs' concern about their authenticity is, at least at this stage, **TERMED** as **MOOT**.

### B.   Counts One and Two–Negligence and Wantonness

Count One asserts that Defendants negligently serviced Plaintiffs' loan and Count Two alleges wantonness in servicing. In any negligence action, Plaintiffs must show the *prima facie* elements of duty, breach of duty, causation, and damages. *See, e.g., Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (listing *prima facie* elements of negligence); *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008) (same).

"To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). Further, "[t]o be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Id.* (citing *Smith v. Davis*, 599 So. 2d 586 (Ala. 1992)).

Citing to several cases, Defendants contend that these counts are implausible because Alabama law does not recognize tort claims when the breach of duty is

premised upon a contractual agreement. (Doc. 29 at 5-6).[5] In *Vines v. Crescent Transit Co.*, 85 So. 2d 436 (Ala. 1955), the Supreme Court of Alabama observed that:

> [A] negligent *failure* to perform a contract express or implied . . . is <u>but a breach of the contract</u>. But if in performing it, it is alleged that defendant negligently caused personal injury or property damage to plaintiff, the remedy is in tort, for it is not the breach of a contract express or implied, but the breach of an implied duty to exercise due care not to injure plaintiff or her property which is the gravamen of the action.

*Id.* at 440 (emphasis by underlining added); *see also Barber v. Bus. Prod. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), *overruled on other grounds by White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009) ("However, a mere failure to perform a contractual obligation is not a tort.").

Relying upon the Alabama common-law principles articulated in *Vines*, *Barber*, and other cases, the district court in *Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206 (M.D. Ala. 2012), "found that Alabama law would not recognize a tort claim for negligent or wanton mortgage servicing." *Barnett v. JP Morgan Chase Bank, Nat. Ass'n*, No. 1:12-CV-1745-VEH, 2013 WL 3242739, at *11 (N.D. Ala. June 26, 2013); *see also James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1199-1200 (S.D. Ala. 2015) (collecting federal cases holding that Alabama law does not recognize claims for negligent or wanton mortgage servicing and rejecting such

---

[5]  All page references to Doc. 29 correspond with the court's CM/ECF numbering system.

claims).

This court, persuaded by *Blake*, has similarly found these contract-driven servicing claims to be implausible tort theories under Alabama law. *Barnett*, 2013 WL 3242739, at *11; *see Vines*, 85 So. 2d at 439 ("The fact that [the applicable contract] was negligently breached does not affect the nature of the cause of action."). Further, since *Barnett*, the Alabama Supreme Court has expressly clarified that a wanton servicing claim is not cognizable under Alabama law. *See U.S. Bank Nat. Ass'n v. Shepherd*, No. 1140376, 2015 WL 7356384, at *13 (Ala. Nov. 20, 2015) ("The *James* [district] court has correctly stated Alabama law as it applies to claims alleging that lenders have <u>acted wantonly with regard to servicing and handling mortgages</u>.") (emphasis added). Finally, nothing in Plaintiffs' opposition persuades this court that *Barnett* and similar authorities were wrongly decided. Therefore, the Motion is **GRANTED** as to Counts One and Two and those claims are **HEREBY DISMISSED WITH PREJUDICE**.

### C.    Count Three–Unjust Enrichment

Count Three asserts unjust enrichment on the basis that Plaintiffs "have been forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under threat of foreclosure . . . ." (Doc. 18 at 10 ¶ 39). As the Supreme Court of Alabama has explained this equitable doctrine:

> To prevail on a claim of unjust enrichment, the plaintiff must show that
> the "'defendant holds money which, in *equity and good conscience*,
> belongs to the plaintiff or <u>holds money which was improperly paid to
> defendant because of *mistake or fraud*</u>.'" *Dickinson v. Cosmos Broad.
> Co.*, 782 So. 2d 260, 266 (Ala. 2000) (quoting *Hancock–Hazlett Gen.
> Constr. Co. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986)) (some
> emphasis omitted; some emphasis added). "The doctrine of unjust
> enrichment is an old *equitable* remedy permitting the court in equity and
> good conscience to disallow one to be unjustly enriched at the expense
> of another." *Battles v. Atchison*, 545 So. 2d 814, 815 (Ala. Civ. App.
> 1989) (emphasis added).

*Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1122-23 (Ala. 2003)

(emphasis by underlining added).

In moving to dismiss this equitable claim, Defendants rely primarily upon *Fed.

Home Loan Mortgage Corp. v. Anchrum*, No. 2:14-CV-02129-AKK, 2015 WL

2452775 (N.D. Ala. May 22, 2015). *Anchrum* is factually dissimilar from this case

because the mortgage foreclosure sale at issue there was not merely threatened, but

actually occurred. 2015 WL 2452775, at *2; *see id.*, 2015 WL 2452775, at *6 ("To

the extent the Anchrums argued that Wells Fargo and/or Freddie Mac received the

full market value of their home through a wrongful foreclosure, this raises claims for

breach of contract or wrongful foreclosure, not unjust enrichment."). Therefore, the

court disagrees with Defendants that *Anchrum* directly supports a dismissal of this

claim.

The court also rejects Defendants' efforts to show that Plaintiffs' unjust

enrichment claim is barred by the existence of their loan documents–*i.e.*, the note and mortgage. As *Anchrum* points out, the mere mentioning of this proposition by *Pattans Ventures. Inc. v. Williams*, 959 So. 2d 115, 117 n.2 (Ala. Civ. App. 2006) in a footnote "is arguably only *dicta*." *Anchrum*, 2015 WL 2452775, at \*5. Further Defendants have not persuaded the court that "a claim for unjust enrichment is necessarily predicated on an implied contract theory." *Id.*

At the same time, the court agrees with Defendants that this part of Plaintiffs' complaint is insufficiently alleged. For example, "[Plaintiffs] do not allege . . . that they were tricked or defrauded into paying any amounts . . . ." *Id.* at \*6 (emphasis added). Additionally, Plaintiffs need to provide more detail about the amounts and timing of the alleged improper fees and other charges that they claim Defendants received from them that were not due under the note and mortgage during the pendency of the threatened foreclosure. *Cf. id.* ("That they made payments they were contractually obligated to make is hardly an unjust enrichment of Wells Fargo."). Importantly, if Defendants derived no actual financial benefit from Plaintiffs beyond what was contractually due to be paid under the terms of the note and mortgage, then no plausible claim for unjust enrichment will lie. Therefore, the Motion is **GRANTED** as to Count Three with leave for Plaintiffs to replead their unjust enrichment claim in a non-shotgun manner that also satisfies the *Twiqbal* standard.

### D.     Count Four–Wrongful Foreclosure

The parties agree that no foreclosure has taken place and that Plaintiffs are still residing in their Vestavia Hills home. The Supreme Court of Alabama has explained that "[a] mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992). Courts interpreting Alabama law consistently have held that, unless a foreclosure sale actually occurs, the power of sale has not been exercised, and a claim based only on pre-sale proceedings cannot satisfy the *Reeves* standard. *See, e.g., Hardy v. Jim Walter Homes, Inc.*, No. CIV. A. 06-0687-WS-B, 2007 WL 174391, at *1 (S.D. Ala. Jan. 18, 2007) ("[T]he clear weight of authority from other jurisdictions is that wrongful foreclosure actions are not recognized unless a foreclosure actually takes place."); *see also McKinley v. Lamar Bank*, 919 So. 2d 918, 930 (Miss. 2005) ( "There was no wrongful foreclosure because there was never a foreclosure at all."); *Reese v. First Missouri Bank and Trust Co. of Creve Coeur*, 736 S.W.2d 371, 373 (Mo. 1987) (reporting that only three of the 29 jurisdictions in the United States permitting nonjudicial foreclosure through power of sale have found actionable a lender's attempted foreclosure that does not result in a sale).

In the absence of any Alabama authority to the contrary, the court is persuasively guided by the reasoning in *Hardy*, *Reeves*, and *McKinley*, and finds that Plaintiffs' wrongful foreclosure count does not state a claim upon which relief can plausibly be granted under the allegations of their case. Accordingly, the Motion is **GRANTED** on wrongful foreclosure and Count Four is **HEREBY DISMISSED WITH PREJUDICE**.

### E.    Count Five–Slander of Title

To establish a claim for slander of title, Plaintiffs must show:

(1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) <u>malice</u> of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that <u>special damages</u> were the proximate result of such publication (setting them out in detail).

*Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981). Plaintiffs premise their slander of title claim on Defendants' threatened foreclosure. (*See* Doc. 18 at 11 ¶ 46 ("Defendant, in attempting foreclosure has caused a cloud to be placed on the title of the property of the Plaintiff.")).

To the extent that a <u>threatened</u> foreclosure can support a slander of title claim under Alabama law,[6] Plaintiffs have not plausibly alleged this count. For example,

---

[6] Defendants hint that such a claim is not cognizable, but cite to no supporting authority.

Plaintiffs do not claim special damages or assert facts that could conceivably support that element. *See Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913) ("The nature and essential effect of the special damage suffered, if the action is maintainable, is that the false and malicious matter charged interrupted, or injuriously affected, some dealing of the plaintiff with his property, or naturally, reasonably, and proximately superinduced the necessity for his pecuniary expenditure . . . ."). Similarly, they neither have claimed maliciousness on the part of Defendants nor alleged facts that establish the existence of that element. Therefore, the Motion is **GRANTED** as to Count Five with leave for Plaintiffs to replead their slander of title claim in a non-shotgun and *Twiqbal*-satisfying format.

### F.   Count Six–Breach of Contract

To establish a breach of contract, Plaintiffs must show:

> (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.

*Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala.1999)). Plaintiffs' shotgun complaint purports to bring this claim collectively against Defendants for misapplying or misplacing mortgage payments made by Plaintiffs and failing to provide them with proper notices of default and acceleration. (Doc. 18 at 11-12 ¶¶ 52-54). Plaintiffs

have not plausibly asserted this claim against Wells Fargo/ASC because they have not alleged the existence of a valid contract with that entity. Instead, they have only identified Wells Fargo/ASC as the mortgage servicing company.

At least one court has dismissed a breach of contract claim brought against a mortgage servicing company under circumstances similar to Plaintiffs' allegations here and this court finds that authority to be persuasive. *See Webb v. Ocwen Loan Servicing, LLC*, No. CIV. A. 11-00732-KD-M, 2012 WL 5906729, at *8 (S.D. Ala. Nov. 26, 2012) (granting summary judgment on breach of contract claim brought against loan service provider). As the court explained its reasoning in *Webb*:

> Webb must first establish the existence of a valid contract with Ocwen. The parties do not dispute the absence of a contract between Webb and Ocwen. Webb relies upon a theory of agency under Alabama law based in part on Ocwen's alleged failure to disclose to Webb that it was acting as Freddie Mac's agent by servicing the mortgage. However, the Alabama cases cited by Webb involve the circumstance where the agent entered into a contract on behalf of an undisclosed principal. Under that theory, Ocwen could be liable only if it had entered into the mortgage on behalf of Freddie Mac. That did not occur. Webb also argues that Ocwen stepped into Freddie Mac's position upon assignment of the mortgage. However, Webb's mortgage was assigned to Ocwen on June 29, 2010, after the conduct creating the alleged breach had occurred. Therefore, summary judgment is **GRANTED** in favor of Ocwen as to Webb's claim for breach of the mortgage agreement.

2012 WL 5906729, at *8 (emphasis by underlining added).

Akin to *Webb*, Plaintiffs seek to impose contractual liability against Wells

16

Fargo/ASC even though there is no allegation that Plaintiffs ever had a valid contract with that Defendant. Further, Plaintiffs offer no alternative theory why Wells Fargo/ASC could plausibly be contractually liable to them under Alabama law in the absence of an express contract. Accordingly, the Motion is **GRANTED** on breach of contract and Count Six is **HEREBY DISMISSED WITH PREJUDICE** to the extent it is brought against Wells Fargo/ASC in its role as a mortgage servicing company. To the extent that Plaintiffs are pursuing a breach of contract claim against an entity or entities that loaned them money or have ever held their mortgage during a period of time when an alleged breach occurred, the Motion is **GRANTED** as to Count Six with leave for Plaintiffs to replead that specific breach of contract claim in a non-shotgun and *Twiqbal*-satisfying format.

### G.    Count Seven–Fraud

Plaintiffs assert a bare-boned fraud claim against "**ALL DEFENDANTS**" on the basis that "Defendant misrepresented that the loan was in default." (Doc. 18 at 13 ¶ 57). Plaintiffs' vaguely-worded allegations of fraud are entirely lacking under FED. R. CIV. P. 8 and, more importantly, FED. R. CIV. P. 9. *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Accordingly, the Motion is **GRANTED** as to Count Seven with leave for Plaintiffs to replead their fraud claim in a non-shotgun format

that simultaneously satisfies *Twiqbal* and the requirements of Rule 8 <u>and</u> Rule 9.

### H.    Count Eight–False Light

Plaintiffs allege that Defendants' oral and written negative and untrue credit remarks about their loan unreasonably placed them in a false light. (Doc. 18 at 14 ¶¶ 61, 64). Plaintiffs do not expressly allege to whom Defendants made these false-light communications, but the implication is that these negative comments were reported to credit agencies or bureaus.

As Defendants correctly point out, the undersigned has previously held in *Barnett* that 15 U.S.C. § 1681t(b)(1)(F) of the Fair Credit Reporting Act ("FCRA") preempts "defamation, libel, or slander claims . . . that arises out of any false reports made to credit agencies." 2013 WL 3242739, at *13. Further, nothing in Plaintiffs' opposition persuades this court that *Barnett* and similar authorities were wrongly decided. Therefore, because Plaintiffs' false light claim is akin to one for defamation, the Motion is **GRANTED** as to Count Eight and Plaintiffs' false light claim for inaccurate reports made to credit agencies or bureaus is **HEREBY DISMISSED WITH PREJUDICE** as preempted by the FCRA.

### I.    Count Nine–Defamation, Libel, and Slander

For the same rationale relied upon in dismissing Count Eight, the Motion is **GRANTED** as to Count Nine and Plaintiffs' defamation, libel, and slander claim for

inaccurate reports made to credit agencies or bureaus is **HEREBY DISMISSED**

**WITH PREJUDICE** as preempted by the FCRA.

**J.      Count Ten–Truth in Lending Act**

Plaintiffs maintain that Wells Fargo/ASC violated the Truth in Lending Act

("TILA") by failing to provide them with certain statutorily-required notices. (Doc.

18 at 17-18 ¶ 85). Defendants assert that Plaintiffs' TILA count is time-barred and

further that Wells Fargo/ASC cannot be liable under TILA because it never extended

any credit to Plaintiffs.

Turning to Defendants' statute of limitations contention first, 15 U.S.C. §

1640(e) provides that:

> Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a) of this title), 1 year from the date on which the first regular payment of principal is due under the loan. Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation.

15 U.S.C. § 1640(e) (emphasis added). None of the disclosure violations mentioned

by Plaintiffs in Count Ten invoke § 1639, § 1639b, or § 1639c so the alternative 3-

year statute of limitations period is not triggered.

Further, Plaintiffs' underlying mortgage documents reflect that they closed on their loan with AmSouth Bank on September 23, 2005. (Doc. 29-1 at 1). Therefore, to the extent that certain TILA-mandated disclosures were not provided to Plaintiffs at the onset of the loan, their time to sue for those violations expired on September 23, 2006, or shortly thereafter.

While equitable tolling can sometimes operate to save an otherwise stale TILA claim under § 1640(e), *see Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998) ("We therefore agree with the Third, Sixth, and Ninth Circuits that the statute of limitations in TILA is subject to equitable tolling."), Plaintiffs have not mentioned equitable tolling in their complaint or their opposition to Defendants' Motion or explained why that exception, *e.g.*, some affirmative act of deception on the part of Wells Fargo/ASC, should apply to their facts. Indeed, in their opposition to the Motion, Plaintiffs do not even acknowledge that the Motion seeks to have their TILA claim dismissed on untimeliness grounds. Therefore, Plaintiffs have, through this significant omission, implicitly conceded that their TILA claim is, indeed, time-barred.

Alternatively, Defendants contend that Wells Fargo/ASC cannot be liable for any disclosure violations because it does not qualify as a creditor under TILA and therefore cannot be liable under § 1640. As defined in § 1602(g):

20

The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g).

Nowhere do Plaintiffs assert that Wells Fargo/ASC ever extended credit to them or loaned them money. Instead, Plaintiffs affirmatively allege in their amended complaint that AmSouth Bank was their creditor when the loan originated. (*See* Doc. 18 at 2-3 ¶ 5 ("[O]n September 30, 2005[,] the Zanatys refinanced their property with AmSouth Bank and received and executed a mortgage and also signed a promissory note with AmSouth Bank.")). Further, Plaintiffs entirely fail to respond to this alternative argument when opposing the Motion.

Accordingly, the Motion is **GRANTED** as to Count Ten and Plaintiffs' TILA claim asserted against Wells Fargo/ASC is **HEREBY DISMISSED WITH PREJUDICE**.

### K.      Count Eleven–Real Estate Settlement Procedures Act

Plaintiffs maintain that Wells Fargo/ASC violated the Real Estate Settlement Procedures Act ("RESPA") "by failing to acknowledge or respond to Zanaty's

Qualified Written Request (QWR)." (Doc. 18 at 19 ¶ 91). Defendants acknowledge that such a claim is cognizable under 15 U.S.C. § 2605(e).

Nonetheless, they maintain that Plaintiffs have not plausibly supported that claim by either attaching the QWRs upon which they rely or alleging facts that satisfy the content-based requirements of § 2605(e)(1)(B). *See Patrick v. CitiFinancial Corp., LLC*, No. 3:15CV296-WHA, 2015 WL 3988860, at *3 (M.D. Ala. June 30, 2015) ("Courts have concluded that if plaintiffs do not attach a QWR to the complaint, they should plead facts which show that their written request included the information required by 12 U.S.C. § 2605(e)(1)(B)." (citing *Tallent v. BAC Home Loans*, No. 12CV3719, 2013 WL 2249107, at *3 (N.D. Ala. May 21, 2013))). This court is persuaded by *Patrick*, *Tallent*, and other cases which require a plaintiff to substantiate the validity of a QWR's contents as part of his complaint.

Defendants also attack Plaintiffs' RESPA claim for inadequately pleading damages. Concerning damages and costs, RESPA provides that individuals may recover:

> (A) any actual damages to the borrower as a result of the failure; and
>
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f)(1).

Plaintiffs' allegations of damages attributable to RESPA are cast in generalized terms and do not assert <u>any</u> actual damages that were caused by the alleged QWR violations. (*See* Doc. 18 at 19 ¶ 92 ("Because of said violations of said acts, the Zanatys were damaged because they were not informed of the information regarding their loan.")).

Therefore, the court agrees with Defendants that Plaintiffs' RESPA claim for QWR violations is pleaded inadequately. Accordingly, the Motion is **GRANTED** as to Count Eleven with leave for Plaintiffs to replead their RESPA claim, including their allegation of damages, in a non-shotgun and *Twiqbal*-satisfying format.

### L.    Count Twelve–FCRA

Plaintiffs' Count Twelve appears to assert two different types of potential FCRA violations against Wells Fargo/ASC–one for making inaccurate reports to credit reporting agencies (15 U.S.C. § 1681s-2(a)) and the other for failing to investigate and promptly respond to Plaintiffs' notices of dispute (15 U.S.C. § 1681s-2(b)). At the same time, Plaintiffs' complaint contains no references to the specific provision(s) of the FCRA under which they are pursuing relief.

An unpublished panel of the Eleventh Circuit has held that "[t]he FCRA . . . does not provide a private right of action to redress . . . a violation [of § 1681s–2(a)]," because "[e]nforcement of this provision is limited to federal agencies, federal

officials, and state officials." *Green v. RBS Nat. Bank*, 288 F. App'x 641, 642 & n.2 (11th Cir. 2008). Plaintiffs do not dispute the validity of the § 1681s–2(a) holding in *Green*.

Accordingly, the Motion is **GRANTED** as to Count Twelve and any FCRA claim premised upon 15 U.S.C. § 1681s-2(a) is **HEREBY DISMISSED WITH PREJUDICE**. Further, Plaintiffs are given leave to replead their FCRA claim in a non-shotgun and *Twiqbal*-satisfying format, including a specific reference to which statutory provision(s) (other than § 1681s-2(a)) that Plaintiffs maintain Wells Fargo/ASC has violated.

### M.    Count Fifteen–Equal Credit Opportunity Act

Count Fifteen asserts a claim arising under the Equal Credit Opportunity Act ("ECOA") against Wells Fargo/ASC. Section 1691(a)(1) of the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction–(1) on the basis of race, color, religion, national origin, sex or marital status, or age . . . [.]" 15 U.S.C. § 1691(a)(1). Relying upon the 12(b)(6) district court reversal in *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204 (9th Cir. 2013), Plaintiffs more specifically maintain that Wells Fargo/ASC violated § 1691(d)(2) because Plaintiffs suffered an "adverse action" concerning the termination of their loan modification agreement (Doc. 18 at 27 ¶ 122), but were never provided

"a statement of reasons for such action . . . ." 15 U.S.C. Section 1691(d)(2). As Plaintiffs point out, several courts have held that the statement of reasons provision can be violated even in the absence of a substantive discrimination claim. *See, e.g., Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 728 (N.D. Ill. 2005) ("Without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA."); *see id.* at 728-29 (collection of cases cited therein that stand for same general proposition).

In their Motion, Defendants acknowledge *Schlegel*, but maintain that Plaintiffs' case is more comparable to *Gomez v. Bayview Loan Servicing, LLC*, No. 3:14-CV-04004-CRB, 2015 WL 433669 (N.D. Cal. Feb. 2, 2015), because Plaintiffs were in default when the acceleration letter was sent to them and, therefore, no cognizable adverse action within the scope of the ECOA occurred. *See* 15 U.S.C. § 1691(d)(6) (clarifying that "[s]uch term[, *i.e.*, adverse action,] does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit"). Defendants also note several other cases that generally observe the same § 1691(d)(6) proposition, but do not discuss any facts of those decisions. (Doc. 29 at 26 n.14).

Further, in advancing their argument, Defendants fail to acknowledge that the

*Gomez* court dismissed the ECOA claim before it because the plaintiff did not make any debt-modification allegations and, therefore, "ha[d] not sufficiently alleged that he [wa]s an 'applicant' within the plain meaning of the ECOA and c[ould not] invoke the protections of the Act." 2015 WL 433669, at *4. Here, Plaintiffs have expressly tied their ECOA claim to the revocation of a purported loan modification agreement. (Doc. 18 at 27 ¶ 122). This means that Plaintiffs' case is <u>not</u> closer to *Gomez*, as Defendants contend.

Having considered both sides' positions and in the absence of any on-point controlling authority, the court concludes that the viability *vel non* of Plaintiffs' ECOA claim is better dealt with on a more developed record that establishes a timeline of key events regarding the status of Plaintiffs' residential loan and any application to restructure that debt as well as clarifies the extent to which any aspect of that timeline is materially disputed. Accordingly, the Motion is **DENIED** with respect to Count Fifteen.

### N.    Count Sixteen–Breach of Good Faith and Fair Dealing

Count Sixteen of Plaintiffs' amended complaint seeks to impose liability against all Defendants for violating an implied duty of good faith and fair dealing concerning the handling of their mortgage and their application for a loan modification. (Doc. 18 at 29 ¶¶ 127, 128). Defendants contend that this type of claim

is not cognizable outside of the insurance context. (Doc. 29 at 27).

In *Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co.*, 601 So. 2d 942 (Ala. 1992), the Supreme Court of Alabama explained:

> This Court has explicitly held that there is no good faith contractual cause of action, *Tanner v. Church's Fried Chicken, supra; Government Street Lumber Co. v. AmSouth Bank, supra*; that means that bad faith is not actionable absent an identifiable breach in the performance of specific terms of the contract. There is no identifiable breach in the performance of the specific terms of the license agreement by Alabama Power; and there is no contractual cause of action for breach of an implied duty of good faith that nebulously hovers over the contracting parties, free from the specific terms of the contract.

*Lake Martin*, 601 So. 2d at 945 (emphasis added); *accord Kennedy Elec. Co., Inc. v. Moore-Handley, Inc.*, 437 So. 2d 76, 81 (Ala. 1983) ("The plaintiff argues that this court should extend to the area of general contract law the tort of bad faith that has already been recognized in the context of insurance policy cases." (citing *Prudential Insurance Co. of Am. v. Coleman*, 428 So. 2d 593 (Ala.1983))); *Kennedy*, 437 So. 2d at 81 ("Although every contract does imply good faith and fair dealing (*see* § 7-1-203, Code 1975), it does not carry with it the duty imposed by law which we have found in the context of insurance cases.") (emphasis added); *Kennedy*, 437 So. 2d at 81 ("We are not prepared to extend the tort of bad faith beyond the area of insurance policy cases at this time." (citing *Brown-Marx Associates, Ltd. v. Emigrant Savings Bank*, 527 F. Supp. 277 (N.D. Ala. 1981))).

Moreover, Plaintiffs have not provided any countervailing controlling Alabama authority that confirms their ability to assert a claim for implied breach of good faith and fair dealing in the context of lender liability under Alabama law. Therefore, Defendant's Motion is **GRANTED** as to Count Sixteen and Plaintiffs' good faith and fair dealing claim is **HEREBY DISMISSED WITH PREJUDICE**.

### O.    Count Seventeen–Declaratory Relief

The last count of Plaintiffs' amended complaint asserts a claim for declaratory relief in the form of an order that would preclude Defendants from foreclosing on their home. (Doc. 18 at 30 ¶ 131). Defendants contend in their Motion that this equitable count should be dismissed because of Plaintiffs' "failure to do equity"–come to the court with clean hands by curing their defaulted status under their residential loan. (Doc. 29 at 28). While Defendants cite to three cases that generally support this commonly understood equitable principle, they do not delve into any comparison of Plaintiffs' case with the allegations or procedural postures of those decisions. Further, this court is not inclined to dismiss this declarative count on such an underdeveloped record. *Cf. McCulley v. Countrywide Homes Loans, Inc.*, No. CIV. A. 12-0359-CG-C, 2013 WL 3187995, at *1 (S.D. Ala. June 21, 2013) (cited by Defendants) (claim for declaratory relief dismissed on a summary judgment record). Therefore, Defendants' Motion is **DENIED** with respect to Count Seventeen.

## IV. Conclusion

Accordingly, for the reasons explained above, the Motion is **GRANTED IN PART** and otherwise is **DENIED**. Further, Counts One, Two, Three, Four, Six (as brought against Wells Fargo/ASC in its capacity as a mortgage servicing entity), Eight, Nine, Ten, Twelve (to the extent premised upon 15 U.S.C. § 1681s-2(a)), and Sixteen are **HEREBY DISMISSED WITH PREJUDICE** and are no longer a part of this action. Plaintiffs' deadline to replead their complaint in a manner that fully complies with Rule 8, asserts <u>only</u> plausible and non-shotgun claims, and comports with the court's other repleader requirements is **<u>no later than 5:00 p.m. on December 2, 2016</u>**. Finally, consistent with footnote 2 above, Doc. 36 is **GRANTED** and the clerk is **HEREBY DIRECTED** to reinstate U.S. Bank, N.A. as a Defendant.

**DONE** and **ORDERED** this the 9th day of November, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

29